[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14676
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-03261-ELR

SECURITIES AND EXCHANGE COMMISSION,

Plaintiffs - Appellees,

versus

ROBERT D. TERRY,
Court Appointed Receiver,

Defendant - Appellee,

CARRIE MISTINA,

Intervenor Party - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 19, 2020)

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

After the Securities and Exchange Commission ("SEC") brought a complaint seeking injunctive and other equitable relief against the perpetrators of a Ponzi scheme, the district court appointed a receiver to oversee the recovery and distribution of assets for the corporate entities involved. Among the assets the receiver claimed as part of the receivership estate was a promissory note reflecting a third party's pledge to make payments worth up to $225,000. Appellant Carrie Mistina contends that she was the lawful owner of the note before the receivership and that the district court denied her due process by permitting the receiver to seize the note without a meaningful opportunity to be heard at an evidentiary hearing or an adjudication of her property interest. We agree that Mistina was denied due process, so we vacate and remand for further proceedings.

**I.**

In September 2012, the SEC filed an application for an injunction and other equitable relief, alleging that Angelo Alleca, Summit Wealth Management, Inc. ("Summit"), and three investment funds that had been created by Alleca were operating a Ponzi scheme in violation of federal securities law. The district court appointed a receiver, Appellee Robert D. Terry (the "Receiver"), and authorized him to recover and secure assets belonging to Summit, among other things. The court

2

also ordered a stay of all civil litigation involving any receivership property or receivership entities.

The subject of this appeal is a pre-receivership transfer from Summit to Mistina, Summit's Chief Financial Officer. In August 2012, around a month before the SEC initiated this action, Mistina reached an agreement with Alleca to pay Summit $30,000 in exchange for the assignment to Mistina of the four remaining annual payments due to Summit under a promissory note from a third party, Alexandria Capital, LLC (the "Note"). Alexandria agreed to the assignment, which was finalized in writing. Mistina notified the Receiver of her interest in the Note shortly after his appointment.

On or before March 28, 2013, the Receiver informed Mistina that he considered the assignment of the Note "to be void as a fraudulent conveyance." About a month later, Mistina submitted a claim to the Receiver in which she contended that Summit owed her $225,000. The parties agree that the value of the remaining payments under the Note was between $130,000 and $225,000. In her claim, Mistina described the indebtedness as based on an "assign[ment of] all the proceeds of the Alexandria Capital LLC Account in exchange for $30,000."

In June 2013, Mistina sued Alexandria to collect on the Note in the U.S. District Court for the Eastern District of Virginia. This action was stayed "pending either a resolution of plaintiff's claims by the receiver appointed by the U.S. District

Court of the Northern District of Georgia or a ruling by the U.S. District Court for the Northern District of Georgia lifting its stay order."

In May 2014, Mistina moved to intervene in the receivership action and to clarify or modify the stay order. In a response opposing relief from the stay, the Receiver contended that the Note assignment was a fraudulent transfer under Georgia law and that, even if it was not, allowing the Virginia action to go forward would interfere with the orderly administration of the receivership action. The Receiver advised that "[a]t the appropriate time, the Receiver intends to institute litigation against Mistina to set aside the note assignment as a fraudulent conveyance, and against Alexandria to recover the cumulative amounts due." Mistina replied that an evidentiary hearing was required to adjudicate her claim challenging whether the Note assignment was fraudulent, and she requested that the court set a date for an evidentiary hearing to determine the lawful owner of the Note. The Receiver sought leave to file a sur-reply arguing that no evidentiary hearing was necessary to decide the motion for relief from the stay.

Despite his statement that he intended to "institute litigation against Mistina to set aside the note assignment as a fraudulent conveyance," the Receiver later stated in September 2014, in an interim report to the court, that "[r]ather than engage in separate litigation regarding these claims, the Receiver believes they can be most efficiently resolved as part of the claims adjudication process."

In March 2015, the district court granted Mistina's motion to intervene but denied the motion for clarification or modification, concluding that Mistina's claim against Alexandria was "squarely within the Receiver's jurisdiction" because it "involv[ed]" Summit, a receivership entity, and because the Receiver contended that the Note had been fraudulently conveyed to Mistina and was therefore receivership property. But the court did not resolve whether the Note assignment was fraudulent, stating that "[t]his is an issue to be resolved only if necessary with litigation between the Receiver and Mistina." Because the court denied Mistina's motion without reference to whether the assignment was fraudulent, it concluded that no evidentiary hearing was necessary at that time.

On June 8, 2017, the Receiver filed a proposed plan to resolve all claims, including Mistina's claim, and a motion to approve that plan. These filings stated that the Receiver was allowing only $30,000 of Mistina's claim, of which she would receive $4,211.49 as a pro-rata distribution of Summit's distributable assets. The proposed distribution plan did not address any substantive issue regarding the Note assignment. The district court set a hearing date of September 19, 2017, to consider any objections to the plan, as well as an objection deadline of August 16, 2017. Neither Mistina nor her counsel filed any objection to the Receiver's partial disallowance of her claim or appeared for the September 19 hearing.

After the hearing, on September 21, 2017, the district court entered an order approving the Receiver's plan, except for two claims not at issue here. That same day, the Receiver sued Alexandria for breach of contract, without notice to Mistina, asserting that Alexandria had failed to make any of the four annual payments to Summit under the Note. Two months later, the Receiver and Alexandria reached a settlement under which Alexandria would pay the receivership estate $77,000. The Receiver then moved the district court for an order approving the settlement and entering a bar order that would prevent third parties, such as Mistina, from bringing claims based on the Note.

In July 2018, Mistina objected to the proposed settlement and bar order. In her objections, Mistina explained that she had agreed to pay $30,000 for Summit's interest in the Note because it was "cash-strapped and in need of $30,000 to pay the premium on its $3,000,000 errors and omissions policy ('E&O Policy')." Because of the funds Mistina provided, she asserted, the E&O Policy was in force when Summit went into receivership, and the policy payout ultimately provided $1,487,500 of the $1,811,065 in assets that the Receiver had available to distribute to Summit's creditors. Mistina further contended that the Receiver had abandoned any claim that might permit him to include the Note in the receivership estate, and that he therefore had no legal right to enter into a settlement with Alexandria. In

6

Mistina's view, "the Receiver and Alexandria Capital are colluding to have the Court endorse an arrangement in which they take money that does not belong to them."

The Receiver responded that Mistina was attempting to relitigate a claim that had been resolved as part of the approved distribution plan. The Receiver further stated that, if Mistina's claim was not barred, the court should overrule her objection on the ground that the Note assignment was a fraudulent transfer.

Mistina replied that the Receiver cannot simply claim ownership, without due process, over property of which she was the record owner. She explained that she had filed a claim "to protect her ability to obtain whatever funds might be distributed in the event the Note was deemed to belong to Summit and thereby became part of the Estate's distributable property." She noted that the objection deadline was well before the Receiver could have litigated the issue of whether the Note was part of the receivership estate. And she contended that the claims process had nothing to do with the determination of what property belongs to the receivership estate in the first instance.

After a hearing, the district court entered an order overruling Mistina's objection and granting the Receiver's motion to approve the settlement and bar order. The court cited three reasons for overruling the objection: (1) if it sustained the objection, that would contravene the approved plan of distribution and prejudice the entire receivership estate; (2) Mistina failed to object to the distribution plan's

treatment of her claim, which presented the same grounds for recovery as her current objection; and (3) it was not appropriate to decide the merits of Mistina's claim to the Note, which presented a dispute between the Receiver and Mistina, in the context of a motion to approve a settlement between the Receiver and Alexandria.

Mistina appeals, arguing that the district court erred by permitting the Receiver to seize her property without affording her the due process of a merits-based, evidentiary hearing to determine her interest in the Note. The Receiver responds that adequate due process was available to Mistina through the claims process, but she failed to use that process when she did not object to the Receiver's proposed resolution of her claim.

## II.

"The district court has broad powers and wide discretion to determine relief in an equity receivership." *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). In determining relief in a receivership case, the district court may use so-called "summary proceedings," which promote judicial efficiency, so long as the procedure provides claimants with due process. *Id.*

"Due process, in its most basic form, still requires notice and an opportunity to be heard." *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1316 (11th Cir. 2019). To determine whether the district court provided due process, "we look at the actual substance, not the name or form, of the procedure to see if the [claimant's]

8

interests were adequately safeguarded." *Id.* (quotation marks omitted). "[A]t minimum summary proceedings must provide [claimants] with necessary information, a meaningful opportunity to argue the facts and their claims and defenses, and an adjudication of their claims and defenses." *Id.* at 1319; *Elliott*, 953 F.2d at 1567 (claimants must be given a "full and fair opportunity to present their claims and defenses").

In *Elliott*, we concluded that certain claimants' due-process rights were violated in a receivership case where the claimants were permitted to file written forms with their objections only. 953 F.2d at 1568. We concluded that this process was inadequate because the issue of whether a pre-receivership transfer was fraudulent "required an evidentiary hearing" where the claimants could "present and argue their facts" and "rebut the characterization of the transfer and present affirmative defenses." *Id.*

Then, in *Torchia*, we again found that the district court's summary proceedings in a receivership failed to provide sufficient due process to certain claimants. 922 F.3d at 1319. The claimants were allowed to file objections to the receiver's proposed distribution plan and to present oral argument at a hearing, but the court "limited the scope of the objections and the issues at oral argument to the form of the proposed distribution plan" and declined to "substantively address" the claimants' arguments. *Id.* We concluded that the court denied the claimants "a

meaningful opportunity to object to the receiver's determinations and calculations, present evidence and argue their claims and defenses, and challenge the substance of the receiver's proposed distribution plan." *Id.*

Mistina argues that her property was taken by the Receiver without due process of law. The Receiver stood in the shoes of Summit, and he "obtain[ed] only the rights of action and remedies that were possessed by" that corporation. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020). No one disputes that Mistina, as the apparent lawful owner of the Note at the time the Receiver was appointed, was entitled to due process before she was deprived of her property interest. *Elliott*, 953 F.2d at 1566 ("[I]f government action will deprive an individual of a significant property interest, that individual is entitled to an opportunity to be heard."); *Sec. & Exch. Comm'n v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996) ("For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard."). Nor is it disputed that the district court never adjudicated the substance of Mistina's challenge, whether after an evidentiary hearing or otherwise, to the Receiver's contention that the Note assignment was a fraudulent conveyance under Georgia law. *See Torchia*, 922 F.3d at 1319.

Nevertheless, the Receiver maintains that adequate due process was available to Mistina through the claims process. And because Mistina chose not to pursue her

10

claim through this process by objecting to the Receiver's distribution plan, according to the Receiver, she cannot now complain that the process was inadequate.  In support of that argument, the Receiver makes two somewhat inconsistent assertions: (1) "[t]here is no way to determine" that the process would have been inadequate because of her failure to object; and (2) the process would have been adequate because "she would have received an adjudication based upon evidence she could have presented at the hearing dealing with the plan's approval."  Br. of Appellee at 17–18.

Viewing the totality of the circumstances and the "actual substance, not the name or form, of the procedure," we conclude that Mistina was not provided "sufficient notice and/or a meaningful opportunity to be heard."  *Torchia*, 922 F.3d at 1316–17.  The Receiver is correct that Mistina could have pursued her objections through the claims process, as did the claimants in *Torchia* and *Elliott*.  *See id.* at 1313–14; *Elliott*, 953 F.2d at 1567–68.  And her failure to do so introduces a greater degree of uncertainty than was present in those cases.  Indeed, we can envision circumstances where a claimant's failure to object during the claims process would foreclose her objections altogether.

But under the circumstances presented by this particular record, Mistina lacked sufficient notice that the claims process was available and adequate to resolve her objections to the Receiver's treatment of the Note assignment as a fraudulent

11

conveyance. Over a year after Mistina filed a proof of claim to the Receiver based on the Note, the Receiver expressly informed both Mistina and the district court, after Mistina sued to collect on the Note in Virginia, that he "intend[ed] to institute litigation against Mistina to set aside the note assignment as a fraudulent conveyance, and against Alexandria to recover the cumulative amounts due" under the Note. While the Receiver appeared to walk back that position in a later-filed interim report, the district court then stated that the fraudulent transfer issue was "an issue to be resolved only if necessary with litigation between the Receiver and Mistina." The references to "litigation" appear to contemplate some process, either within or outside the receivership case, distinct from the claims process, and introduced ambiguity into the proper procedure through which Mistina's challenge would be resolved. No such separate litigation was ever instituted, however. Nor did the Receiver's distribution plan address the fraudulent-transfer issue. In sum, Mistina lacked adequate notice that her claim to ownership of the Note could be resolved through the claims process, such that her failure to object to the distribution plan would amount to a waiver of her assertion of ownership.

Nor are we persuaded that the process available to Mistina had she objected to the distribution plan would have permitted her to "present and argue [her] facts" and "rebut the characterization of the transfer and present affirmative defenses."

*Elliott*, 953 F.2d at 1568.  As we stated in *Elliott*, this type of issue generally requires an "evidentiary hearing," which Mistina requested in proceedings below.  *See id.*

On this record, the fact that Mistina could have appeared for the hearing on the distribution plan is not alone enough to show that her interests would have been "adequately safeguarded."  *Torchia*, 922 F.3d at 1316.  In *Torchia*, for example, we held that the hearing on the receiver's distribution plan failed to provide sufficient due process to certain claimants because they "were not permitted to call witnesses or conduct discovery, and oral argument was limited to objections to the plan's claims and distribution process."  *Id.* at 1313–14, 1319.  Likewise, in *Liberte Capital Grp., LLC v. Capwill*, the Sixth Circuit held that a final distribution hearing did not provide sufficient process and that the trial court should have held a separate hearing regarding the claimant's challenge to the ownership of certain assets.  421 F.3d 377, 384–85 (6th Cir. 2005).  In reaching that conclusion, the Sixth Circuit drew a "distinction between a hearing on the merits of a receiver's seizing of assets to be included in the receivership estate and the method of distribution of those assets." *Id.*

The circumstances here do not indicate that the hearing on the Receiver's distribution plan would have provided any more process than was afforded to the claimants in *Torchia* or *Capwill*.  As we noted above, the district court indicated that the fraudulent-transfer issue should be resolved with "litigation," if necessary.

Moreover, the distribution plan did not discuss any substantive issue with regard to the Note assignment.  And the hearing was set to resolve objections to the proposed distribution plan by any of Summit's hundreds of claimants.  In these circumstances, we cannot conclude that Mistina, had she objected and appeared at the hearing, would have been permitted a "full and fair opportunity" to present and argue her facts and to "rebut the characterization of the transfer and present affirmative defenses."  *Elliott*, 953 F.2d at 1567–68; *see also Torchia*, 922 F.3d at 1319.

For these reasons, we conclude that the summary proceedings in this case provided insufficient process to Mistina.  While the district court and the Receiver both suggest that affording Mistina further process would contravene the approved distribution plan, they cite no supporting authority, and we have stated that "the need for expediency . . . do[es] not outweigh a[] [claimant's] right to due process." *Torchia*, 922 F.3d at 1319.  We therefore vacate the order approving the settlement and bar order with regard to the Note, and we remand for further proceedings consistent with this opinion.[1]

**VACATED AND REMANDED.**

---

[1] We decline to address Mistina's arguments regarding her remedies on remand or whether a fraudulent-transfer claim is now time barred.